**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **RASHAWN CIERS,** | * | |
| **Plaintiff,** | * | |
| **v.** | * | **Civil No. 8:25-02849-CDA** |
| **UNITED STATES OF AMERICA,** | * | |
| **Defendant.** | * | |

* * *

## MEMORANDUM OPINION

BEFORE THE COURT is a Defendant United States of America's Motion to Transfer or, in the alternative, Motion to Dismiss. ECFs 14, 14-1. Defendant contends that this case should be transferred to the Eastern District of Michigan or dismissed, for either lack of subject matter jurisdiction or failure to state a claim. ECF 14-1. Plaintiff has also filed a Motion for Leave to File a Surreply in opposition to Defendant's motion. ECF 20. The Court has reviewed all papers, and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the following reasons, Defendant's Motion to Transfer is GRANTED, Defendant's Motion to Dismiss is DENIED as moot, and Plaintiff's Motion for Leave to File a Surreply is GRANTED.

### I. BACKGROUND[1]

Plaintiff Rashawn Ciers brought this suit against the United States of America based on alleged acts committed by employees of the United States Postal Service

[1] For the purpose of deciding a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint and construes such facts, as well as reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *See, e.g.*, *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

("USPS") and USPS-Office of Inspector General ("OIG") "within the scope of their federal duties." Amended Complaint, ECF 9 ("Am. Compl."), at 7. The circumstances underlying Plaintiff's claim began in 2001, when he sustained a lumbar spinal injury while employed as a mail handler for USPS in Detroit, Michigan. *Id.* According to Plaintiff, the Department of Labor Office of Workers' Compensation Programs ("OWCP") accepted his claim and began to pay him "medical and wage-loss benefits during intermittent periods." *Id.* Despite this, he alleges, on March 29, 2006, OIG began investigating his benefits claim and created a document titled "BEGINNING OF FRAUD" that summarized investigative developments. *Id.* at 8. Plaintiff insists that these efforts indicate a "predisposed fraud narrative that colored subsequent investigative steps and communications." *Id.* On February 12, 2009, after an investigation, USPS sought to terminate Plaintiff's benefits because he "had improperly claimed disability while engaged in outside employment." *Id.* at 12-13. Plaintiff objected such termination, claiming that "[Department of Labor] regulations explicitly allow for concurrent dissimilar employment." *Id.* at 13.

Plaintiff contends that on February 12, 2009, OWCP "escalated surveillance and coordinated actions" in part by requesting a "Second Opinion Examination" and re-involving special agents in the investigation of his worker's compensation claims. *Id.* at 13-14. Plaintiff claims that USPS also issued a subpoena to one of his private employers for employment records, "form[ing] the basis for administrative misuse of process that foreseeably distorted administrative decision-making and caused economic and reputational harm." *Id.* at 14-15. After continuing to investigate Plaintiff's benefit claims, on August 21, 2009, USPS issued a Notice of Removal, charging Plaintiff with "Misrepresentation of Physical Condition" and "Failure to Report Earned Income." *Id.* at 20. On September 25, 2009, USPS removed Plaintiff from his position. *Id.* Plaintiff

alleges that the Notice of Removal was based on a special agent's false reporting and "omit[ed] material facts already supplied by OWCP and disregard[ed] both the treating-physician's confirmation of ongoing work-related disability and the AUSA's April 2008 decision not to prosecute" him for misrepresentation. *Id.* According to Plaintiff, USPS committed "administrative negligence" by failing to "conduct due diligence" when it did not independently verify the accuracy of the OIG report. *Id.* at 21.

On May 31, 2011, USPS sent Plaintiff a letter informing him that he would be assigned to work as a call center agent, effective June 11, 2011, with training beginning two days later in Detroit. *Id.* at 26. Plaintiff worked at the call center until June 15, 2011, when he aggravated his spine, resulting in his treating physician ordering him to cease working. *Id.* at 27. Plaintiff contends that on June 20, 2011, USPS halted the reemployment effort and subsequently did not pay him for the days he allegedly worked. *Id.* On August 9, 2012, OWCP terminated Plaintiff's wage-loss benefits. *Id.* at 31.

The narrative skips ahead to 2024, when Plaintiff submitted a new request for surgical authorization. *Id.* at 32. Sometime thereafter, Plaintiff submitted a Freedom of Information Act ("FOIA") request for the "underlying agency communications that OWCP said it had received from USPS." *Id.* at 32-33. Plaintiff alleges that these documents "revealed, for the first time, USPS-OIG-authored reports and emails that omitted critical facts and mischaracterized [his] employment status." *Id.* at 33. Plaintiff avers that USPS-OIG refuses to release the full investigative file, but that the "evidence now available indicates that the agency maintained conflicting records for years before the subpoena being served [on his private employers]." *Id.* Plaintiff contends that this "constitutes a misuse of subpoena power and an egregious abuse of federal investigative authority under color of law." *Id.*

Plaintiff filed this suit on August 29, 2025, seeking relief pursuant to the Federal Tort Claims Act ("FTCA").[2] ECF 1. He maintains that he does not "seek review of OWCP merits determinations" and "alleges the conduct at issue is operational misuse of investigative/administrative tools and communications[.]" Am. Compl. at 7, 34. Thus, he asserts two causes of action under Michigan tort law: (1) "negligence (operational)" and (2) abuse of process. *Id.* at 46.

On March 2, 2026, Defendant filed its pending motion seeking transfer or dismissal. ECF 14. Plaintiff filed an opposition on March 17, 2026, and Defendant filed its reply three days later. ECFs 17, 18. On March 23, Plaintiff filed a Motion for Leave to File a Surreply, arguing that Defendant's reply raised new arguments and an improper request that the court reject Plaintiff's exhibits attached to his opposition. ECF 20, at 2.

## II. ANALYSIS

In its motion, Defendant asserts that the case should be transferred to the Eastern District of Michigan because, although Plaintiff now lives in Maryland, all alleged conduct occurred in Michigan, all causes of action arise under Michigan tort law, and Plaintiff is already engaged in litigation related to his employment at USPS in the Eastern District of Michigan. ECF 14-1, at 7; *see also* Am. Compl. at 4; *Ciers v. Steiner*, No. 2:25-cv-13334-JJCG-KGA (E.D. Mich. filed Oct. 20, 2025). Plaintiff responds that venue in the District of Maryland is proper under the FTCA because he resides in Maryland and a tort claim against the United States "may be prosecuted only in the judicial district where the plaintiff resides or wherein the act or omission complained of occurred." ECF 18, at 7 (citing 28 U.S.C. § 1402(b)). Plaintiff is correct that he may bring these claims in the

[2] He filed the Amended Complaint on December 31, 2025. ECF 9.

District of Maryland. However, for the reasons explained below, the Court agrees with Defendant that the case should be transferred to the Eastern District of Michigan. The Court also grants Plaintiff's Motion related to filing a surreply.[3]

Federal Rule of Civil Procedure 12(b)(3) allows a party to assert improper venue as a defense to a claim for relief, if made "before pleading if a responsive pleading is allowed." Fed. R. Civ. P. 12(b)(3). "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Whether or not to transfer a case is firmly within the district court's discretion. *Ugol v. Nemacolin Woodlands Inc.*, No. 04-3398-WDQ, 2005 WL 1230214, at *1 (D. Md. May 24, 2005) (citing *Southern Ry, Co. v. Madden*, 235 F.2d 198, 207 (4th Cir. 1956)). In deciding whether to transfer venue, the district court should consider four factors: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice."

[3] In general, surreplies are disfavored but may be permitted within the Court's discretion. Loc. R. 105.2.a (D. Md. 2025); *E.E.O.C. v. Freeman*, 961 F. Supp. 2d 783, 801 (D. Md. 2013). The most common scenario in which the Court permits surreplies is where a party was unable to respond to a matter raised for the first time in the opposing party's reply brief. *See, e.g.*, *Clear Channel Outdoor, Inc. v. Mayor & City Council of Balt.*, 22 F. Supp. 3d 519, 529 (D. Md. 2014). The Court has, in several cases, permitted *pro se* parties to file surreplies regardless of whether that scenario exists. *See Courtney-Pope v. Bd. of Ed. of Carroll Cnty.*, 304 F. Supp. 3d 480 (D. Md. 2018); *Wilson v. Navy Fed. Credit Union*, No. GLR-22-3247, 2024 WL 520090 (D. Md. Feb. 9, 2024); *Macena v. U.S. Citizenship & Immigr. Servs.*, No. TDC-14-3464, 2015 WL 6738923 (D. Md. Nov. 2, 2015); *Williams v. Bartee, et al.*, No. CCB-10-935, 2011 WL 2842367 (D. Md. July 14, 2011). Plaintiff is *pro se*, the surreply (which Plaintiff attached to his motion) is less than three pages in substance, and Defendant will not endure undue prejudice if the Court considers the surreply's contents. *See Wilson*, 2024 WL 520090, at *3 (permitting surreply based on *pro se* status and the brevity of the surreply's arguments). Furthermore, consideration of the surreply does not alter the Court's conclusion. Therefore, the Court will grant Plaintiff's motion.

*Trs. of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015). "In a motion pursuant to § 1404(a), the burden is on the moving party to show that transfer to another forum is proper." *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d 615, 617 (D. Md. 2002).

**A. The Weight Accorded to Plaintiff's Choice of Venue**

In general, courts often defer to plaintiff's chosen forum. *Chakrabarti v. USCIS*, No. 21-1945-PJM, 2021 WL 4458899, at *4 (Sept. 29, 2021) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 265-66 (1981) and *U.S. ex rel Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017)). However, if "'none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy[,]'" deference is "not particularly appropriate." *Id.* (quoting *Salomon*, 268 F. Supp. 3d at 774-75). "Moreover, where the 'cause of action is at best only tenuously related to [the chosen forum], plaintiff['s] initial venue of choice will not impede transfer if the relevant §1404(a) factors point to another forum." *Scott v. Branch Banking and Trust Co.*, No. 3:08-cv-357, 2008 WL 4279598, at *3 (E.D. Va. Sept. 18, 2008) (quoting *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F. Supp. 582, 593 (E.D. Va. 1992) (first alteration in original)).

Plaintiff chose to bring this case in the District of Maryland. However, as he acknowledges, "the principal operative acts and omissions underlying these tort claims occurred in Michigan." Am. Compl. at 4. Thus, as Judge Bennett observed in a recent case, "[t]he only connection between this case and the District of Maryland is the plaintiff's claim that Maryland is where he resides." *Payne v. Howard Univ.*, No. 20-1314-RDB, 2020 WL 7588260, at *3 (D. Md. Dec. 22, 2020). That being the case, Plaintiff's "choice of forum is entitled to little deference" and will not impede transfer if

the other § 1404 factors point to the Eastern District of Michigan. *Id.* (citing *Lynch*, 237 F. Supp. 2d at 617); *Scott*, 2008 WL 4279598, at *3 ("'If there is little connection between the claims and [the chosen forum], that would militate against plaintiff's chosen forum and weigh in favor of transfer to a venue with more substantial contacts.'" (quoting *Lycos, Inc. v. TiVo, Inc.*, 499 F. Supp. 2d 685, 692 (E.D. Va. 2007) (alteration in original)).

**B. Witness Convenience and Access**

"The convenience of the witnesses is perhaps the most important factor in determining whether a transfer of venue should be granted." *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 473 (D. Md. 2008) (internal quotation marks and citation omitted). Defendant argues that none of the alleged conduct underlying Plaintiff's claim occurred in Maryland and none of the relevant personnel—e.g., alleged decisionmakers and others involved in the alleged conduct—reside within this state. ECF 14-1, at 9. Plaintiff does not (and, based on his own allegations, could not) refute Defendant's contention about where the conduct occurred. Instead, he counters that Defendant has "not identif[ied] specific non-party witnesses, the substance of their testimony, why compulsory process would be needed, or why depositions and modern discovery tools cannot address these issues." ECF 18, at 7. According to Plaintiff, because the defendant is the United States, relevant records belong to the government, and relevant witness testimony may be obtained through "the ordinary mechanisms of federal litigation," transfer should be denied. *Id.*

The events leading up to this case all occurred in Michigan. Although the Defendant does not offer exacting detail about all likely witnesses and their testimony, the Amended Complaint identifies several individuals acting (or failing to act) while in Michigan during a six-year period that began about twenty years ago. These individuals

include USPS personnel in Michigan as well as Plaintiff's doctors during the relevant period (who are more likely to have been in Michigan during that time than in Maryland). Thus, the record supports the conclusion that relevant witnesses will likely be in or close to Michigan—or, at the very least, not in Maryland. *Cf. Salomon*, 268 F. Supp. 3d at 776 ("While Wolff has not identified with specificity which witnesses reside in New Jersey and their relative level of importance, many New Jersey witnesses were interviewed as part of the criminal investigation that took place in New Jersey. Moreover, many of the alleged proscribed acts took place at the LBG office in New Jersey, and it is obvious that there are likely to be a number of key witnesses who reside in New Jersey."); *Clarendon Nat'l Ins. Co. v. Dan Ryan Builders, Inc.*, No. 19-3527-CCB, 2020 WL 4042900, at *5-6 (D. Md. July 17, 2020).

Plaintiff's retort about electronic discovery has some merit, as the present era of remote hearings or depositions, which use videoconferencing technology, and electronic discovery eliminate some of the traditional barriers to conducting discovery from great distances.[4] Nonetheless, the option for electronic discovery does not outweigh all the

[4] While neither party cites any authority on this point, the Court is aware of some opinions that have concluded that electronic discovery and videoconferencing technology diminish the significance of the location of evidence or witnesses. *See Halbert v. Credit Suisse AG*, 358 F. Supp. 3d 1283, 1287 (N.D. Ala. 2018) ("this factor is less significant in the absence of any contention by the Defendants that they face substantial difficulty in producing relevant documents and given the predominance of electronic discovery in the modern era") (internal quotation marks and citations omitted); *Fanning v. Capco Contractors, Inc.*, 711 F. Supp. 2d 65, 70 (D.D.C. 2010) ("the location of documents is increasingly irrelevant in the age of electronic discovery"); *Eight One Two, LLC v. Purdue Pharma L.P.*, No. 3:13-cv-2981-K, 2014 WL 7740476, at *2 (N.D. Tex. May 16, 2014) (noting that e-discovery "does not negate the significance of or eliminate consideration of this factor in a section 1404(a) analysis" because for the standard is "'*relative* ease of access, not *absolute* ease of access'") (quoting *In re Radmax, Ltd.*, 720 F.3d 285, 287-88 (5th Cir. 2013)) (emphasis in original); *Intell. Ventures I LLC v. Cap. One Fin. Corp.*, No. 14-111-PWG, 2014 WL 979198, at *4 (D. Md. Mar. 12, 2014) ("Documentary evidence is largely electronic, such that location is immaterial") (citing *Netgear, Inc. v. Ruckus Wireless,*

other considerations that point to the Eastern District of Michigan. *Cf. Doe v. A360 Media LLC*, No. 1:23-cv-2954-VMC, 2023 WL 11796095, at *3 (N.D. Ga. Dec. 12, 2023) (transferring case despite plaintiff's arguments about the "ubiquity of Zoom depositions and remote hearings"; "The Court does not intend to conduct a virtual case when it can simply transfer this matter at an early stage in the proceedings to a forum that will be significantly more convenient for all foreseeable non-party witnesses").

Due to the limited information from Defendant about witnesses, this factor does not weigh heavily in its favor. *See Clarendon Nat'l Ins. Co.*, 2020 WL 4042900, at *5-6 (assigning little weight to this factor where most likely witnesses appeared to live in South Carolina but the movant failed to present evidence of any hardship a witness might suffer by traveling to Maryland or how video testimony would not be sufficient). However, for reasons noted above, it does not weigh much against transfer either. Only slightly, if at all, does it favor transfer.

**C. Convenience of the Parties**

Defendant argues that convenience of the parties favors transfer because even though Plaintiff lives in Maryland, he is currently litigating a matter related to his employment with USPS in the Eastern District of Michigan. ECF 14-1, at 9; *see Ciers v. Steiner*, No. 2:25-cv-13334-JJCG-KGA (E.D. Mich. filed Oct. 20, 2025). Further, as noted above, the personnel most familiar with the facts underlying Plaintiff's claims are likely in Michigan. *Id.* Plaintiff responds that he is a Maryland resident proceeding *pro se*, and

---

*Inc.*, No. 10-999, 2011 WL 3236043, at ¶ 14 (D. Del. July 28, 2011)). Nonetheless, the Court is unaware of binding authority that eliminates this consideration from the analysis and, in any event, no one consideration within the § 1404 factors is dispositive. Even if crediting the ability to engage in some exchanges or depositions through electronic or remote means, the Court finds other factors warrant greater weight and tilt the scales heavily toward the ultimate conclusion.

to require him to litigate out of state would be a substantial burden. ECF 18, at 7. He argues that Defendant "is a nationwide litigant with institutional capacity to appear in any district." *Id.* In considering this factor, the Court is careful to avoid a decision that merely shifts inconvenience from one party to another. *Salomon*, 268 F. Supp. 3d at 776.

While Plaintiff is correct that the United States has the capacity to, and does, litigate in any district, this does not change the fact that all the alleged conduct and most witnesses are likely in Michigan. As Plaintiff notes in arguing a different factor, "modern discovery techniques" may lessen potential inconvenience he might otherwise experience obtaining discovery from Michigan. And the Court will not ignore that Plaintiff filed *Steiner* in the Eastern District of Michigan. *See* Complaint, *Ciers v. Steiner*, No. 2:25-cv-13334-JJCG-KGA (E.D. Mich.), ECF 1 (filed Oct. 20, 2025). For reasons discussed below, the presence of related litigation is often considered under the "interest of justice" factor. However, it is relevant here because Plaintiff's choice to file *Steiner*—which concerns the same employment relationship central to this case—in the Eastern District of Michigan undermines any contention that litigating this matter in that same district imposes a burden or other inconvenience so substantial that transfer is inappropriate.[5] For all these reasons, this factor favors transfer.

**D. Interest of Justice**

"The 'interest of justice' factor is broad, encompassing all the factors beyond Plaintiff's preferred forum and the convenience of witnesses and parties, allowing the court to take into account several considerations." *Chakrabarti*, 2021 WL 4458899, at *5

---

[5] This is not to say that the mere fact that a party is litigating in a potential transferee venue will favor transfer. The relationship between the two cases' factual and legal assertions is compelling here.

(citing *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1258 (4th Cir. 1991)). Among the most important considerations are the court's interest in having local controversies decided at home and, relatedly, the court's familiarity with applicable law. *See id.* (citing *Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771-72 (D. Md. 2004)); *Lynch*, 237 F. Supp. 2d at 618. Defendant's argument emphasizes that all alleged conduct occurred in Michigan and that there is no allegation that any "personnel in Maryland were personally involved." ECF 14-1, at 9. Plaintiff argues that "interest of justice" does not favor imposing avoidable burdens on a *pro se* plaintiff. ECF 18, at 7. To this, Defendant counters that it cannot be true that litigating in the Eastern District of Michigan would impose a substantial burden because "Plaintiff is already litigating a related case in the proposed transferee forum." ECF 19, at 2.

Here, Plaintiff brings two claims under Michigan tort law; no federal claims are pending. While this Court may preside over questions of any state's law, the federal judges in Michigan will, no doubt, be more familiar with Michigan torts than this Court will. *Lynch*, 237 F. Supp. 2d at 618 (transferring case alleging tortious conduct under Pennsylvania law to the Eastern District of Pennsylvania); *Revis v. Tustin Constr. Servs., LLC*, 322 F. Supp. 3d 58, 63-64 (D.D.C. 2018) (same); *cf. Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 129 (D.D.C. 2001) (denying transfer because, among other things, the case involved only federal claims and thus did not require interpretation of state law). Based on the location of the alleged conduct, the controversy in this case is more "local" to Michigan than to Maryland. These two considerations weigh firmly in Defendant's favor and support transfer.

In some instances, courts consider the existence of related litigation in the potential transferee forum. *See D2l Ltd. and Desire2Learn, Inc. v. Blackboard, Inc.*, 671

F. Supp. 2d 768, 783 (D. Md. 2009); *Greater Yellowstone Coal.*, 180 F. Supp. 2d, at 129. Plaintiff's pending litigation in the Eastern District of Michigan may be related to the present case in that it concerns his employment relationship with USPS in Michigan. *See Reiffin v. Microsoft Corp.*, 104 F. Supp. 2d 48, 56 (D.D.C. 2000) (noting transfer may be appropriate whether another district has a pending case with "the same factual underpinning," even if addressing a different legal theory); *Int'l Painters & Allied Trades Indus. Pension Fund v. McCormick Painting Co., Inc.*, No. 24-2621-ELH, 2025 WL 895391, at *15 (D. Md. Mar. 24, 2025) (summarizing potential benefits—including avoiding inconsistent results and consolidating discovery—of transfer to a district with a pending litigation arising from the same transaction or event). As Defendant notes in its reply "[t]o permit a situation in which two cases involving similar issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent." ECF 19, at 2 (quoting *Cont'l Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)). The Court agrees. The overlap in the underlying facts among the two cases, while not the primary impetus for the Court's decision, also favors transfer.

Litigating Plaintiff's claims in this District is not in the interest of justice. Maryland does not have the public interest in Michigan tort law or the resolution of this specific dispute that Michigan and its federal courts have. There is no Maryland connection to the merits of this case, other than any alleged damages occurring during the period of Plaintiff's residency here. The interest of justice factor also favors transfer, heavily.

## III. Conclusion

The Court concludes that most, if not all, § 1404 factors favor transfer, and none weigh heavily, if at all, against transfer. While venue is proper here, the § 1404 factors,

taken together, point elsewhere. Thus, Defendants' Motion to Transfer to the Eastern District of Michigan is GRANTED, and the Court will transfer this litigation to the Eastern District of Michigan. The Motion for Leave to File Surreply is GRANTED. Because the Court exercises its discretion to transfer pursuant to Section 1404, it does not address Defendant's arguments that the case should be dismissed.

A separate implementing Order will follow.

Date: August 20, 2026

/s/
Charles D. Austin
United States Magistrate Judge